Rockingham,
No. 6036.

WILLIAM H. MEAD *& a.* d/b/a MEAD'S CRANE SERVICE

*v.*

TRAVELERS INSURANCE COMPANY *& a.*

February 26, 1971.

*Burns, Bryant, Hinchey & Nadeau* and *John T. Barrett, III* ( *Mr. Barrett* orally ), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *William H. Kelley* ( *Mr. Kelley* orally ), for the defendant Travelers Insurance Company.

DUNCAN, J. This is a petition for declaratory judgment brought by subcontractors against their insurer, and against

Harvey Construction Co., Inc., a contractor which employed the plaintiffs in the installation of a 12,000 gallon oil tank on premises of the Vocational Institute on the Lafayette Highway in Portsmouth on November 15, 1965. In the course of installation, the tank broke loose from a crane being used to move it, causing damage to the tank. Subsequently, Harvey sued the plaintiffs herein alleging that the mishap was due to their negligence and seeking damages in the sum of $6,000. The defendant insurer refused to defend the law action upon the ground that its policy excludes coverage, and the plaintiffs seek a judgment declaring that it does not.

A hearing by the Superior Court (*Morris*, J.) resulted in findings and rulings that the defendant is required to defend the pending law action, and to pay any verdict which may be returned against its insureds. The defendant insurer duly excepted. All questions presented by exceptions of record were reserved and transferred by the presiding justice.

The "declarations" of the policy issued to the plaintiffs by the defendant insurer, under "description of hazards," stated in part: "Contractor's equipment — cranes, derricks, power shovels and equipment incidental thereto — rented to others with operators — including installation, repair or removal." The policy contained the following provisions: "Insuring Agreements . . . *Coverage B — Property Damage Liability.* To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

"*Definition of Hazards.* Division 1. *Premises — Operations.* The ownership, maintenance or use of premises, and all operations.

. . . .

"*Exclusions.* This policy does not apply: . . . . (1) under Coverage B, to injury to or destruction of (1) property owned, occupied or used by or rented to the insured, or (2) . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control . . . ."

The findings of the trial court were in part as follows: "On or about November 15, 1965, during the policy period, the

plaintiff was hired by the Harvey Construction Co., Inc., to lift and set a large oil tank in a hole in the ground on a concrete bed. The tank capacity was 12,000 gallons, or more. When the plaintiff, William H. Mead, arrived at the location of the job with his crane, the tank was on the ground sixty to seventy feet from the hole in which the tank was to be installed. At that time the hole was full of water. The hole was about 8 feet from the top of the concrete resting place to the ground surface, and the sides of the hole were shored up by wooden sheathing planks that extended about 7 feet above the surface.

"While the Harvey Construction Co., Inc., employees were pumping water from the hole so the tank could be placed, the plaintiff, William Mead, and his oiler helper fastened the crane cables to lifting pads on the tank and moved the tank in two or three steps and placed it in position so that the plaintiff's crane could make a final lift over the sheathing planks and lower it in the hole to the concrete bed.

"Prior to the final lift, the Harvey Construction Co., Inc., employees requested the plaintiff to use the crane to remove from between the vertical sheathing, horizontal wooden braces.

"After the braces were removed, Harvey Construction Co., Inc., employees refastened the cables from the plaintiff's crane to the lifting pads on the oil tank. One of the Harvey Construction Co. employees fastened a tag line to one end of the oil tank to be used by him in controlling the horizontal movement of the tank. The Harvey Construction Co. labor foreman placed himself so he could be seen by the plaintiff, William Mead, the crane operator. The labor foreman by means of hand signals directed the plaintiff to raise or lower the tank and to move the crane from side to side. The final lift of the tank proceeded until such time as the tank had been hoisted over the 7-foot high sheathing and into the hole, and when the tank was 3 feet more or less from the top of the concrete bed, one of the metal lift pads on the tank . . . broke causing that end to fall on the concrete and causing the crane cable to the opposite end to fray and break and release the tank.

"After the fall, the tank, when tested, leaked oil because of the damage suffered by the fall."

In addition to the findings quoted above, the court in response to plaintiffs' requests found and ruled that at the time of the accident the oil tank "was not property 'in the care, cus-

tody or control of the insured or property as to which the insured for any purpose is exercising physical control' within the meaning of [the] exclusion . . . of the policy. "

The sole issue presented is whether the trial court erred in finding and ruling that the exclusion contained in the policy did not apply. The exclusion is one which we have previously had occasion to consider in application to different circumstances. In *Sanco Company* v. *Employers &c. Insurance Company,* 102 N.H. 253, 154 A.2d 454 ( 1959 ), an elevator which had been damaged was in the control of the insured at the time, and accordingly no coverage was provided by the policy. In *Newfoundland &c. Ins. Co.* v. *Kamieniecki,* 104 N.H. 425, 188 A.2d 480 ( 1963 ), the trial court found that the insured contractor was not exercising control over the wall of a building where he was working, and hence it was held that the policy provided coverage for damage to the wall. In *Peerless Insurance Company* v. *Clough,* 105 N.H. 76, 193 A.2d 444 ( 1963 ), the exclusion in a policy issued to the defendant contractor was held inapplicable, since the damaged premises were not in his control at the time when the damage occurred.

The case before us presents a not unusual situation where one person is engaged in a mechanical operation under the direction of another. In *International Derrick & Equipment Co.* v. *Buxbaum,* 240 F.2d 536 ( 3d Cir. 1957 ), a case relied upon by the defendant insurer herein, the trial court found that the crane operator who was erecting a radio mast when it was damaged had exclusive control of the details of the operation, although the owner of the premises was present at the time. Hence the exclusion from coverage of damage to property in the control of the insured was held to apply. The findings of fact in the case were clearly in sharp contrast to those made in this case.

In *Madden* v. *Vitamilk Dairy Inc.,* 59 Wash. 2d 237, 367 P.2d 127 ( 1961 ), where a milk tanker operated by an employee of the plaintiff was damaged while being emptied by employees of the insured dairy, an exclusion from coverage of damage to property as to which the insured for any purpose was exercising physical control was held to be applicable. The court commented: " The dairyman had the sole authority to *direct* that the truck be moved. Who did the driving is immaterial. " *Id.* at 240, 367 P.2d at 129. *See also Goswick* v. *Em-*

*ployers' Cas. Co.,* 440 S.W.2d 287 ( Tex. 1969 ); Annot., 62 A.L.R.2d 1242 ( 1958 ) and later cases service.

The same principles were applied to sustain a contrary result in *Glen Falls Ins. Co.* v. *Fields,* 181 So. 2d 187 ( Fla. Dist. Ct. 1966 ) *cert. denied,* 188 So. 2d 815 ( Fla. 1966 ), a case relied upon by the plaintiffs herein. There the exclusion was held to be inapplicable where the evidence was that the insured operator of a crane was acting under the direction of a building supply company when a silo was damaged by reason of collapse of the crane.

In the case at bar, the findings of the trial court establish that in the final movement of the tank the operation was conducted wholly in accordance with the direction of Harvey Construction Company, the general contractor. The crane, and William Mead as its operator, were no more than instrumentalities of Harvey. The tank was attached to the crane by Harvey's employees. It was raised and lowered in accordance with their signals. Its horizontal position was directly controlled by them.

According to the evidence, the operation required that the tank be lowered with precision, so as not to strike the sheathing which shored up the sides of the excavation, and so that the tank should finally rest on the cement foundation with its anchor pads in line with bolts to affix it to the cement. An issue of fact was presented as to whether its horizontal motion was being controlled by the tag line when the accident occurred. The clerk of the works testified that after the tank "was within the confines of the hole," the tag line served no further purpose. An employee of the plaintiff testified however, that the tag line was "necessary to keep the tank from swaying . . . until it gets down to the bottom of the pit." The trial court could properly accept the latter testimony.

The court also properly found on the evidence that when the damage occurred Harvey Construction Co. had taken command of the disposal being made of the tank so that the tank was not in the care, custody and physical control of the plaintiffs within the meaning of the policy exclusion. Thus the exclusion was properly held to be inapplicable.

The order is

*Exceptions overruled; judgment for the plaintiffs.*

All concurred.