**MEADOWS & WALKER DRILLING COMPANY, Plaintiff,**

v.

**PACIFIC EMPLOYERS INDEMNITY COMPANY, Defendant,**

v.

**PHILLIPS PETROLEUM COMPANY, Intervenor.**

**Civ. A. No. 69–H–467.**

United States District Court,
S. D. Texas,
Houston Division.

March 9, 1971.

Max H. Jennings, Clawson, Jennings & Clawson, Houston, Tex., for plaintiff.

Russell Talbott, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for defendant.

B. Jeff Crane, Jr., Vinson, Elkins, Searls & Connally, Houston, Tex., for intervenor.

## MEMORANDUM AND ORDER

NOEL, District Judge.

Plaintiff, Meadows & Walker Drilling Company (Meadows), has sued Pacific Employers Indemnity Company (Pacific), contending that the latter is obligated as plaintiff's liability insurer to satisfy a judgment had by intervenor Phillips Petroleum Company (Phillips) against plaintiff. Jurisdiction exists by reason of diversity of citizenship. 28 U.S.C. § 1332. The essential facts having been stipulated, the cause has been submitted on briefs and is now ripe for disposition.

Meadows was engaged in the business of drilling oil wells and contracted to drill a well for Phillips near Alta Loma, Texas. The contract contained a provision indemnifying Phillips for damages during drilling not resulting from the sole negligence of the owner. On the morning of June 14, 1964, a blowout occurred, causing extensive damage to the hole which was repaired at the expense of Phillips. After completion of the well, Phillips declined to pay Meadows for the drilling. Meadows sued to recover for its services, and Phillips counterclaimed for its damages as a result of the blowout. Phillips prevailed on its counterclaim, taking judgment against Meadows in the amount of $131,867.58.[1] Meadows & Walker Drilling Company v. Phillips Petroleum Company, C.A. No. 65–H–164 (S.D.Tex.1967), aff'd 417 F. 2d 378 (5th Cir. 1969). Defendant Pacific, Meadows' liability insurer, declined to defend that action and has refused to satisfy the judgment.

Plaintiff contends that defendant is bound by a contractual property damage liability endorsement attached to the insurance policy.[2] Denominated Coverage Z, it provides in relevant part:

To pay on behalf of the insured all sums which the insured by reason of the liability assumed by him under any written contract designated in the schedule on the reverse side, shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof caused by accident.

As plaintiff was contractually bound to indemnify Phillips for destruction of property caused by negligence of plaintiff,[3] and as Phillips recovered upon a finding by the jury that plaintiff had been negligent,[4] it is contended by plaintiff that its liability insurer is obliged to satisfy the judgment. This would clearly appear to follow from the insurance policy's Coverage Z set out above.

I. To avoid this result, defendant contends that its liability is subject to the following exclusion:

This endorsement does not apply * * * under Coverage Z to injury to or destruction of * * * proper-

---

1. This sum was arrived at in the following manner: Meadows sued in a State Court seeking $207,717.15 for services and equipment rendered Phillips pursuant to the drilling contract. This action was removed to the United States District Court on motion of Phillips. Admitting liability to Meadows in the amount of $47,069.97 for non-blowout expenses, Phillips counterclaimed for $178,937.55 for equipment, chemicals and services which it was compelled to buy as a result of the blowout. The $131,867.58 judgment which resulted was thus derived by subtracting $47,069.97 from $178,937.55.

2. There is some difference about whether plaintiff's reliance should have been on the contractual property damage liability endorsement (Coverage Z) or upon the property damage liability provision in the body of the policy (Coverage D). Defendant suggests that plaintiff's recovery, if any, should be by virtue of Coverage D, which is arguably subject to a $10,000 underground damage liability limitation. However, it is plaintiff's prerogative to choose its theory of recovery,

and it asserts coverage under the contractual property damage liability endorsement.

3. In relevant part, the drilling contract provided: "7(w) Contractor shall indemnify and hold Owner harmless from any and all claims, liabilities, and causes of action of, to, or by third persons, including Contractor, his subcontractors, or the employees of either, for injury to or death of any person and for damage to or destruction of any property, resulting directly or indirectly from any and all acts or omissions of Contractor * * *".

4. At the trial of C.A. No. 65–H–164, "all parties conceded that the terms of the drilling contract exonerated Phillips for all damages caused by the blowout and all expenses incurred in restoring the pre-blowout depth of the well." The jury found that "Meadows had been negligent in failing to furnish drill pipe suitable for the purpose intended, and in misrepresenting the pressures such pipe would withstand." 417 F.2d at 380.

ty used by or in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control.

Therefore, the initial question turns on whether Meadows was exercising such control over the damaged property as to render the control exclusion operative and absolve defendant.

At the trial of C.A. No. 65–H–164, the jury found on special interrogatories that Phillips exercised control over the details of the drilling and other work at the time of the blowout. (Verdict, Question No. 1). Whether that finding, damaging as it is to this defendant who was not there a party, could be given collateral effect in the instant case is a question of some novelty. See 1B Moore's Federal Practice §§ 0.412(3), 0.-441(3); Great American Insurance Company v. Ratliff, 242 F.Supp. 983 (E.D.Ark.1965). However, it is unnecessary to decide this point, as the parties have stipulated as follows:

At the time of the blowout, (Meadows), through its employees and with its equipment consisting in part of a drilling rig, drill stem, drill bit, pumps, and mud was physically operating such equipment in the hole and the drill stem was in motion under the terms of their drilling contract with Phillips, and they were trying to fill the drill stem with mud. The plaintiff was then on a day work basis and pursuant thereto Phillips was telling the plaintiff what procedures it wanted in an effort to complete the well, but such procedures were being carried out by plaintiff and its employees with the use of its equipment.

The "custody or control" exclusion is common in the type of policy here involved, and has recently been given a narrow construction by the Supreme Court of Texas in Goswick v. Employers Casualty Company, 440 S.W.2d 287 (1969). In that case, an oil well service contractor had been retained by the well owner to change the underground pump at the bottom of a 6,000 foot hole. In the process, there was an ignition of gas which so damaged the hole and casing that the well had to be abandoned. Having made a settlement with the owner, the contractor sued his liability insurer for reimbursement. The insurer defended on the ground that the contractor was exercising control of the well at the time of the accident, and was thus barred by the policy's control exclusion (almost identical to that in the case at bar). Upon a review of the authorities which need not be repeated here, the Court held that the exclusion did not apply, and described the scope of the exclusion with textbook clarity:

If the insured under such a policy is repairing or installing item #1 adjacent to item #2 and within the premises of a building, when his negligence causes damage to items #1 and #2, as well as to the building, the exclusion denies coverage only as to that property damaged which was within his possessory control. The cases have limited this 'control' to the particular object of the insured's work, usually personalty, and to other property which he totally and physically manipulates. * * *

The general rule has often been stated to this effect: where the property damaged is merely incidental to the property upon which the work is being performed by the insured, it is not considered as in such 'care, custody, or control' of the insured to be excluded under the policy. (emphasis added)

■ Plaintiff in the instant case, like the plaintiff in Goswick, was physically controlling and manipulating its equipment in the well hole. At the time of the blowout mud was being pumped into the drill stem, and the equipment necessary to this task was "the particular object of the insured's work." However, the damaged property—i. e., the hole which was locationally and functionally incidental to the specific task being performed—remained under the general direction of Phillips, and was not so subject to the control and dominion of Meadows as to render the control exclu-

sion applicable. Cf. Maryland Casualty Company v. Hopper, 237 S.W.2d 411 (Tex.Civ.App.—El Paso 1950, no writ); Boston Insurance Company v. Gable, 352 F.2d 368 (5th Cir. 1965);[5] see generally Annot: Liability Insurance—Custody of Insured, 62 A.L.R.2d 1242 (1958).

■ II. Defendant also contends that the insurance policy only covered liability for injury to or destruction of property caused by accidents, and thus does not cover Phillips' judgment, which was measured by the expense incurred after the blowout in regaining control and depth rather than by the loss of value due to the occurrence. In support of this proposition, cases are cited which hold that the insurer of property damage liability is not answerable for expenses incurred by the insured in complying with an injunction. Desrochers v. New York Casualty Company, 99 N.H. 129, 106 A.2d 196 (1954); Aetna Casualty & Surety Company v. Hanna, 224 F.2d 499 (5th Cir. 1955). Also cited is a recent Texas case holding that liability for property damage does not embrace the wrongful appropriation of crude oil by means of a slanted well. Nortex Oil & Gas Corporation v. Harbor Insurance Company, 456 S.W.2d 489 (Tex.Civ.App.—Dallas 1970, no writ). These authorities might control the instant case if Meadows had been enjoined to repair the damaged well and now sought to recover its expenses in doing so, or if Meadows had converted Phillips' property. But that is not what occurred. After Meadows did the damage, Phillips repaired its own well, sued upon its contract to be made whole, and prevailed. The fact that its recovery was measured by its expenses in restoring the well, rather than by the difference between the value of the well before and after the blowout, is not dispositive. By either measure, the judgment represent-

ed a legal claim for damages for injury to property. The construction of insurance contracts must be guided by common sense, Hall v. Mutual Benefit Health & Accident Association, 220 S.W.2d 934 (Tex.Civ.App.—Amarillo 1949, writ ref'd); Aetna Insurance Company v. Houston Oil and Transport Company, 49 F.2d 121 (5th Cir. 1932), certiorari denied 284 U.S. 628, 52 S.Ct. 12, 76 L.Ed. 535 (1931), and effect must be given to plain words in their ordinary meaning. Vaughn v. Atlantic Insurance Company, 397 S.W.2d 874 (Tex.Civ. App.—Tyler 1965, writ ref'd n. r. e.). By this standard, the judgment recovered by Phillips was a sum which Meadows, to use the words of the endorsement, became "legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

III. Defendant asserts that its liability, if found to exist, is limited to $10,000 by reason of an Underground Property Endorsement which pertains to "injury to or destruction of underground property". This provision contains a definition of such property, which reads in relevant part:

* * * such term also includes any well, hole, formation, strata or area beneath the surface of the earth in or through which exploration for or production of any such [oil, gas, water or other mineral] substance is carried on * * *.

and further specifies as an included activity "Oil or gas wells—drilling * * *", a category of operations which by itself would clearly seem to include the incident here involved. However, the underground property limitation does not stand alone, and defendant's reliance upon it is misplaced.

As noted in footnote 1, supra, this insurance policy contains two property

---

5. In *Gable*, the Court of Appeals for this Circuit, being forced to divine how the Courts of Georgia would construe the clause, was persuaded by the formulation in International Derrick and Equipment Company v. Buxbaum, 240

F.2d 536, 538 (3rd Cir. 1957): "Where the property damaged is merely incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable."

damage liability provisions: (1) Coverage D, in the main body of the policy, applying to property damage liability in general and embracing, presumably, tort liability, and (2) Coverage Z, in the form of an endorsement, promising coverage for contractual property damage liability. Plaintiff relies on the latter.

■ The Court concludes that the $10,000 underground property liability limitation applies only to Coverage D in the body of the policy, not to Coverage Z, the endorsement here involved. This conclusion is compelled for the following reasons:

(1) The endorsement containing Coverage Z embraces its own limit of liability for contractual property damage, and such is set at $100,000 for each accident. It would be strained construction to reach outside the relevant endorsement in order to substitute a general limitation provision for a specific one. This result finds support in Condition I of the Coverage Z endorsement, which provides: "*All of the Conditions of the Policy* which would apply to the bodily injury liability or property damage liability coverages thereof *shall apply to the insurance under this endorsement except* those respecting 'Premium', 'Definitions', '*Limits of Liability*' and 'Assistance and Cooperation of the Insured'". (emphasis added). This would strongly suggest that a liability limitation found outside the four corners of the endorsement must yield to one found inside it.

(2) The contractual property damage liability endorsement contains eight specific exclusions, none of which relate to underground damage. If the draftsman of the endorsement had desired to express an intent of the parties to limit coverage for contractual underground property damage liability to $10,000, it would have been convenient enough to do so explicitly. This is the rationale underlying the rule of construction which provides that "[w]here exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." 7 Williston on Contracts § 918A, p. 564 (3rd ed. 1963); cf. National Surety Corporation v. Musgrove, 310 F.2d 256 (5th Cir. 1962), certiorari denied 375 U.S. 974, 84 S.Ct. 482, 11 L.Ed.2d 420 (1964).

(3) A contract of insurance, like any other contract, should be construed with a view to the prime object and purpose of the agreement. 4 Williston on Contracts § 619 (3rd ed. 1961). One whose business is contracting to drill oil wells might reasonably regard underground property damage liability as a rather significant portion of his exposure to contractual liability, and he might be correspondingly unlikely to intentionally exclude it from his liability insurance protection. As the Supreme Court of Texas observed in *Goswick*, 440 S.W.2d at 289:

> The insurance policy shows that Goswick's business protected by this insurance coverage was 'oil well servicing'. The objective of the insurance contract was to protect Goswick against liability growing out of his work on oil wells operated by others. If no underground damage was to be covered by this policy, Goswick was unprotected against his most common and most serious risks. If the policy had expressly excluded all underground damage in his operation, it would have to be given effect. *But we must presume that the objective of the insurance contract is to insure, and we should not construe the policy to defeat that objective unless the language requires it.* (emphasis added)

■ (4) Whether the contractual liability endorsement is subject to the $100,000 limitation set forth therein, or to the $10,000 underground property damage limitation set forth in another endorsement, presents, at the most, an ambiguity in the policy. In resolving such a conundrum, a Federal Court hearing a diversity case in Texas must be guided by the following principles: (a) an insurance policy will be construed

strictly against the insurer, (b) when its terms reasonably admit of two constructions, the one permitting recovery will be given, and (c) consistent with fairness, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it. Central Surety & Insurance Corporation v. Anderson, 446 S.W.2d 897 (Tex.Civ.App.—Ft. Worth 1969, no writ); Snyder National Bank v. Westchester Fire Insurance Company, 425 F.2d 849 (5th Cir. 1970); Kelley v. American Insurance Company, 316 S.W.2d 452 (Tex. Civ.App.—Texarkana 1958, aff'd 160 Tex. 71, 325 S.W.2d 370); 32 Tex.Jur.2d Insurance §§ 58–60 (1962).

It follows from the above that the contractual property damage liability coverage endorsement must be governed by the $100,000 limitation specified therein.

IV. The final issue concerns Meadows' costs of suit in defending Phillips' counterclaim. Defendant concedes that, should it be found that Phillips counterclaim was covered by the policy, defendant would be liable for the reasonable costs incurred by the insured in defending it. Most of the short trial of this case was devoted to ascertaining the proportion of Meadows' costs in C.A. No. 65–H–164 which could be attributed to defending the counterclaim, as distinguished from the unsuccessful prosecution of the primary claim. As might be predicted on such an issue, the evidence was inconclusive. Defendant suggested that 50% of Meadows' costs in C.A. No. 65–H–164 be allocated to defense of the counterclaim and it is so ordered. Thus guided, it is expected that the parties may stipulate the precise amount.

V. Conclusion

Accordingly, it is held that the judgment taken against plaintiff by intervenor was insured by defendant to the extent of $100,000 by reason of the contractual liability coverage endorsement denominated Coverage Z. Additionally, defendant was obligated to defend the suit which resulted in that judgment.

The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52, Fed.R.Civ.P. The plaintiff shall prepare and submit within fifteen (15) days, a proposed form of judgment consistent herewith and approved as to form by all parties. The Clerk shall send copies of this Memorandum and Order to all counsel.