[Civ. No. 15338. Third Dist. Apr. 14, 1978.]

HOME INDEMNITY COMPANY, Plaintiff and Appellant, v.
LEO L. DAVIS, INC., et al., Defendants and Respondents.

864

COUNSEL

Bolling, Pothoven, Walter & Gawthrop and T. D. Bolling, Jr., for Plaintiff and Appellant.

Carr, Kennedy, Peterson & Frost and Lawrence W. Carr for Defendants and Respondents.

OPINION

JANES, J.—Plaintiff Home Indemnity Company (Home) appeals from an adverse judgment entered in its action for declaratory relief. Home's

insured, defendant Leo L. Davis, Inc. (Davis),[1] had been held liable in damages to defendants Redding Constructors, Inc. (Redding) and O'Hair Construction Co., Inc. (O'Hair) for damages to and the loss of use of a pugmill, part of a portable batch plant, sustained while the batch plant was being dismantled with the use of a crane owned by defendant Davis. The declaratory judgment held that Home was obligated to provide coverage to Davis for such liability, and further, that Home was obligated to reimburse Davis for his attorney fees incurred in defending the earlier action against him by Redding and O'Hair.

Home contends that the pugmill, at the time of damage, was under the "care, custody or control" of Davis and that, in construing the policy provision hereinafter discussed, the court erred in not holding that the pugmill was excluded from coverage under the policy issued to Davis. Home also assigns as error the court's order that Home reimburse Davis for attorney fees, since it did provide Davis a defense in the previous action.

The facts are not in dispute. Defendants O'Hair and Redding are construction companies engaged in road building and paving. O'Hair rented from Redding a batch plant for mixing concrete and asphalt and installed the plant on property rented from William Gallardo. At the time of the accident O'Hair had completed use of the plant and was in the process of dismantling it for removal to another location. The plant was portable in the sense that its component parts each could be removed, transported, and then remounted at a different jobsite. The parts consisted of a shaft-like elevator that went down the right side of the unit, a screen on top of the main structure, below it a block, and below that the pugmill—a rectangular structure just above the legs of the unit. To each component part there was affixed a permanent hook, so that the part could be lifted for disassembly and reassembly.

In order to accomplish the disassembly and placement on a truck, O'Hair rented from Davis, Home's insured, a 25-ton Lorraine crane with an operator. The only functions served by the crane were the removal from the batch plant of the major component parts and then the subsequent transfer of those parts from the ground, where they would first be placed, to the truck which was to transport them. All work preliminary to the actual disassembly of the plant was performed by O'Hair personnel.

---

[1]Defendants Leo L. Davis, Inc. and Leo L. Davis will be referred to collectively as Davis.

The actual lifting operation is described by the court in a portion of finding No. 5: "O'Hair and Redding employees prepared the various units of the plant for successive 'picks'; to wit: Lifting by the crane from the asphalt plant to the ground. Employees of O'Hair and Redding put their own slings on the individual units to enable the crane to lift and remove one unit at a time. No employees of defendant [Davis] were at any time on the plant itself, or involved in any preparation for a pick, or hooking up the units being removed and lifted to the ground. Signals were given from the employees of O'Hair and Redding on the plant to O'Hair's supervisor on the ground, who in turn gave the signal to the crane operator to signify readiness for the pick. As each unit was being lowered to the ground an O'Hair employee held onto a guide rope guiding each individual unit to the ground as it was picked. The units were placed upon the ground leased by O'Hair to be hauled to a new O'Hair jobsite. . . ."

The testimony of Davis' crane operator, Robert Reynolds, upon which most of the quoted finding was based, further revealed that during the process of making the picks, as well as hooking the crane and all other operations, the crane operator could at no time see the end of the crane boom and the hook. In other words, he was working completely blind, acting solely upon the directions issued by O'Hair personnel and only after all required preparatory work had been performed by them. The damage which precipitated the underlying action occurred during the lifting of the pugmill. It had been lifted three inches to clear the bolts on the legs of the plant and was being placed on the ground when a crane cable parted. The pugmill fell to the ground and was damaged.

At the time of the accident there was in force a policy of insurance issued by Home to Davis which provided coverage with respect to the 25-ton Lorraine crane. The policy contained the following relevant exclusion: "This insurance does not apply: . . . to property damage to . . . property in the care, custody or control of the insured as to which the insured is for any purpose exercising physical control . . . ." Following the accident, Davis made application to Home for a defense and coverage. Home refused to acknowledge coverage under the policy for damage to the pugmill, and loss of its use, on the ground that the pugmill at the time of injury was within "the care, custody or control of the insured." Davis then retained private counsel in the action brought against him by Redding and O'Hair.

Approximately nine months later, Home notified Davis by letter that coverage was denied also because of an exclusion in a broad form property damage endorsement. Home's assertion that the endorsement formed a part of Davis' policy was incorrect.[2] The letter stated in closing, "[a]lthough as mentioned above, we will provide a courtesy defense in this matter at this time, we also are referring our file out to separate counsel for review and evaluation concerning the coverage question. In the interim, we would appreciate it if you would acknowledge by signing and returning the original of the attached non-waiver agreement."

The court found that Davis' employment of separate counsel "was required by reason of the controversy and dispute over coverage and the resulting conflicts arising in said litigation between [Home] and [Davis], and as a proximate result of the failure of [Home] to properly conform to the terms of its insurance contract." It is undisputed that Davis was represented in the Redding and O'Hair action by both retained counsel and counsel employed by Home. That initial action concluded with the entry of a stipulated judgment in favor of Redding and O'Hair and against Davis in the sum of $40,000—$28,000 to O'Hair and $12,000 to Redding.

With respect to the circumstances of the pugmill incident, the court specifically found—as to both the batch plant and the pugmill—that they were never in Davis' possession, nor under his care, custody or control; and that Davis never, for any purpose, exercised physical control over them. Additionally, the court found the exclusion in the Home policy to be ambiguous.

On the basis of the foregoing findings the court concluded that damage to the pugmill was covered under the Home policy, and that Home was liable for Davis' attorney fees. Judgment in accordance with the findings and conclusions was entered and this appeal followed.

[2]It was established by the evidence and agreed by the parties that while Davis had in fact paid a premium for such broad form property damage endorsement, that endorsement had not been forwarded with the policy delivered to him and had never at any time been furnished him. In view of the conclusion we will reach with respect to the "care, custody or control" exclusion of the basic policy, we need not consider the arguably more restrictive exclusion contained in the broad form endorsement which was not a part of the policy.

EXCLUSION: CARE, CUSTODY OR CONTROL; PHYSICAL CONTROL

Before turning to the exclusion, we review certain basic principles which guide the interpretation of insurance contracts. As stated by the trial court in its memorandum of intended decision:

■ "The fundamental rule of construction applicable to contracts of insurance requires the enforcement of a contract according to the intention of the parties as demonstrated by the language employed, read and considered as a whole. ■ The instrument is to be construed in a manner which gives a reasonable meaning to all its provisions in a natural, reasonable and practical manner, having reference to the risk and subject matter and to the purposes of the entire contract. ■ While courts must protect insurers against unjust claims and enforce regulations for their protection, it is a fact that the primary object of all insurance is to insure and the construction should be taken which will render the contract operative, rather than inoperative, and which will sustain the claim for indemnity, if reasonably possible, rather than exclude it. See *Boswell* v. *Travelers Indemnity Co.,* 120 A.2d 250."

■ Home, in its argument that the exclusion operates to preclude coverage (i.e., that the pugmill was in Davis' care, custody or control, or at least that he had physical control of it), cites a number of out-of-state cases in which the exclusion was held applicable. Several appear at first glance to be factually similar to the present case. (See, e.g., *Phoenix of Hartford* v. *Holloway Corporation* (Fla. 1972) 268 So.2d 195, 198-199; *Monari* v. *Surfside Boat Club, Inc.* (2d Cir. 1972) 469 F.2d 9, 12; *International Derrick & Equipment Co.* v. *Buxbaum* (3d Cir. 1957) 240 F.2d 536, 538-539.) Closer examination, however, reveals that most are distinguishable. Moreover, several cases have been found which are factually indistinguishable from that before us and in which the exclusion was held inapplicable.

The factor relied upon most heavily in the latter cases is that control was effectively retained in some fashion by the owner of the damaged property or by his employees during the time that the contractor was doing whatever he was to do to or with the damaged property. Illustrative of these cases are *Mead* v. *Travelers Insurance Company* (1971) 111 N.H. 27 [274 A.2d 792] and *Glens Falls Insurance Company* v. *Fields* (Fla. 1965) 181 So.2d 187. In the first, the insured subcontractor, Mead, was lifting a large oil tank with his crane when the tank broke loose and was damaged. The contractor who had hired Mead and his

crane to assist in the tank's installation sued for the damage to the tank. Mead's insurer refused to defend, on the ground that an exclusion in Mead's policy, identical to that in the policy before us, precluded coverage. The evidence showed that before the particular lift, the contractor's employees had fastened the crane cables to the lifting pads on the tank, had fastened a tag line to the tank to guide it during the lift, and had positioned themselves so as to direct all operations to be performed by Mead. During the lift itself, Mead followed the signals of the contractor's foreman. (274 A.2d at p. 794.) After reviewing the evidence and considering relevant cases, the court concluded "that in the final movement of the tank the operation was conducted wholly in accordance with the direction of . . . the general contractor. The crane, and . . . its operator were no more than instrumentalities of [that contractor]." (*Id.,* at p. 795.) Accordingly, the court held the exclusion inapplicable. (*Ibid.*)

In the second case, defendant Fields rented a crane with operator from plaintiff Glens Falls' insured for the purpose of lifting a cement silo and placing it on a truck. During the lift the crane's boom collapsed and the silo was destroyed. (181 So.2d at p. 188.) Glens Falls asserted, in defense of a garnishment claim, an exclusionary clause identical to that presently before us. As in *Mead* v. *Travelers Insurance Company, supra,* the evidence showed that the crane was operated solely at the direction of its hirer, Fields, and that the silo was at all times in both his proprietary and possessory control. The crane and its operator being mere instrumentalities of the hirer, the exclusion was held inapplicable. (*Id.,* at p. 189.)

In both *Mead* and *Glens Falls,* the case of *International Derrick & Equipment Co.* v. *Buxbaum, supra,* 240 F.2d 536—heavily relied upon by Home—was distinguished on the fact that there the contract entered by the crane contractor for erection of a mast on a tower provided that he was to have complete control of the manner in which the job was to be done, the equipment to be used, and all details of the job itself. Similarly, in the California cases that have applied the exclusion to defeat coverage, contractual responsibility for the entire operation rested with the insured. (See *Volf* v. *Ocean Accident & Guar. Corp.* (1958) 50 Cal.2d 373, 375-376 [325 P.2d 987]; *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co.* (1971) 19 Cal.App.3d 914, 924 [97 Cal.Rptr. 498].)[3]

---

[3]The case last cited, *Silva & Hill Constr. Co.* v. *Employers Mut. Liab. Ins. Co., supra,* contains the following dictum: "The language used [in the exclusionary clause] has seemingly obtained a secondary meaning within the industry and in the law. Thus, it has been held that such provisions limit the insured's coverage to property other than that on

Almost invariably where coverage is denied, physical control by the insured has been exclusive, even if such exclusivity was only momentary, so long as the damage occurred in that moment. (See e.g., *Monari* v. *Surfside Boat Club, Inc., supra,* 469 F.2d 9, 12.) Our attention has been drawn to several cases in which the exclusion similarly defeated coverage despite the fact that the insured's control was not exclusive because he was receiving directions from another. (See, e.g., *Phoenix of Hartford* v. *Holloway Corporation, supra,* 268 So.2d 195; *Appicelli Sales and Service, Inc.* v. *Citizens Mutual Insurance Company* (1972) 40 Mich.App. 287 [199 N.W.2d 242].) Such cases are to be contrasted, however, both with the present case and with those denying effect to the exclusion and thus affirming coverage, where physical control was shared by another with the insured.

Another approach taken in situations where the exclusion has been held inapplicable is to view the insured as having been given merely temporary access to the damaged property. A leading case expressing this theory is *Bituminous Casualty Corp.* v. *Chicago R. I. & P. R. Co.* (1972) 8 Ill.App.3d 172 [289 N.E.2d 464], where the insured crane operator was employed to empty a derailed freight car. When his crane could not reach all the contents, he was instructed by the railroad to cut another opening in the car. Sparks from the cutting torch ignited materials in the car and it and the remaining contents were destroyed. It was held that the car and its contents were not in the insured's control, but instead he had merely been given temporary access thereto. (*Id.,* at p. 466.) This approach is generally applied where the property damaged is realty or is affixed to realty. (See, e.g., *Klapper* v. *Hanover Insurance Company* (1963) 39 Misc.2d 215 [240 N.Y.S.2d 284]; *Meadows & Walker Drilling Co.* v. *Pacific Emp. Indem. Co.* (S.D.Tex. 1971) 324 F.Supp. 282; see also *Haerens* v. *Commercial Cas. Ins. Co.* (1955) 130 Cal.App.2d Supp. 892 [279 P.2d 211].)

That the particular exclusionary clause before us has been the subject of much litigation is patent. Equally clear is the fact that in varying factual situations the precise exclusion has been held both ambiguous and unambiguous. The only consistency in the cases is the need for

which the work is being performed. (*Volf, supra; Geddes, supra* [51 Cal.2d 558 (334 P.2d 881)]; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indem. Co.,* 63 Cal.2d 602, 608-609 [47 Cal.Rptr. 564, 407 P.2d 868]; *Rafeiro* v. *American Employers' Ins. Co.,* 5 Cal.App.3d 799 [85 Cal.Rptr. 701]; *Owens Pacific Marine, Inc.* v. *Insurance Co. of North America,* 12 Cal.App.3d 661, 666-667 [90 Cal.Rptr. 826].)" (19 Cal.App.3d at p. 924.) Examination of these five cases reveals that with the exception of *Volf,* none deal with the care, custody or control exclusion; most are products hazard cases.

painstaking evaluation of the specific facts of each case, especially those that bear on the nature and extent of the insured's control. (See *Mid-Continent Cas. Co.* v. *Peerless Boiler & Eng. Co.* (Okla. 1964) 398 P.2d 79, 81.) While it is true that the weight of authority favors applying the exclusion (see Annot., Liability Insurance-Custody of Insured (1958) 62 A.L.R.2d 1242; 12 Couch on Insurance (2d ed. 1964) § 44:424 et seq.), the courts are not averse to holding it inapplicable where the control exercised by the insured—possessory or physical—is not exclusive and complete at the critical moment in question.

Here, Davis' control of the pugmill was not exclusive at the time of the accident. The crane and its operator are best described as mere instrumentalities of O'Hair, with momentary access to the pugmill and the other parts of the batch plant in order to serve O'Hair's purposes, at O'Hair's direction, and under O'Hair's control. The most that can be said with respect to the pugmill is that O'Hair and Redding temporarily shared with Davis their control of the pugmill insofar as necessary to lift that part. In such circumstances, it cannot be said that the trial court erred in finding that the pugmill, at the time of the accident, was not within the care, custody or control of Davis within the meaning of the policy exclusion. The result thus follows that Davis is provided the insurance coverage which under the evidence he intended to purchase and believed he had.

### COMPENSATION FOR LEGAL EXPENSES

■ Under this heading Home argues, without citation of authority, that the court erred in awarding Davis compensation for the legal fees incurred in retaining counsel to defend him in the action brought by Redding and O'Hair, since Home provided him with counsel in that action. It will be recalled from our discussion of the facts that Home initially denied both coverage and defense, and only after almost a year's delay, and after Davis had retained counsel, did it advise Davis that notwithstanding its continuing denial of coverage it would provide a "courtesy defense."

Absent some authority for the proposition that Davis was obligated to content himself with the courtesy defense offered by an insurer who persistently maintained a position adverse to his interests, Home's final contention must be rejected. (See *South Santa Clara etc. Dist.* v. *Johnson*

(1964) 231 Cal.App.2d 388, 405 [41 Cal.Rptr. 846]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 [29 Cal.Rptr. 60].)

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.