[No. B009443. Second Dist., Div. Two. Oct. 28, 1985.]

PAUL BARRETT et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE GROUP et al., Defendants and Respondents.

**748**

---

**COUNSEL**

Brahm, Rudorfer & Rosenthal, Neal R. Rosenthal and Joseph Rudorfer for Plaintiffs and Appellants.

Cooper, Monkman, Sanborn & Brown and James B. Sanborn for Defendants and Respondents.

## OPINION

**COMPTON, J.**—The sole issue on this appeal is whether several uninsured motorist coverages issued by the same insurance company to the same insured may be "stacked" or pyramided so that the benefits under the policies are payable in an amount exceeding the limits of any one of the separate uninsured motorist coverages.

The essential facts are not in dispute. In March 1981, plaintiffs Paul Barrett and Sara Gentry sustained serious injuries when their motorcycle collided with an automobile driven by one La Preal Bauer. Each plaintiff subsequently recovered $25,000, the maximum coverage available under the liability policy insuring Bauer's vehicle.

At the time of the accident, Barrett, the driver of the motorcycle, was a resident of his parents' household. In January 1981, Barrett's stepfather, John Jansen, had purchased three automobile policies from defendant Farmers Insurance Exchange (Farmers), separately insuring the motorcycle and two other family owned vehicles. The policies contained uninsured motorist provisions with coverage limits of $15,000 per person and $30,000 per accident. These sums were in compliance with the requirements of this state's financial responsibility law.[1] Separate premiums were paid on each policy.

Gentry later recovered an additional $15,000 from Farmers under Barrett's liability coverage as permissive user of the motorcycle. Farmers then paid plaintiffs a total of $30,000 under the uninsured motorist provision covering the motorcycle. Believing they had been inadequately compensated, both plaintiffs asserted claims of $15,000 each under the policies of insurance covering the two family owned vehicles not involved in the accident. When Farmers' refused coverage, plaintiffs instituted this suit for declaratory relief. Following a trial on the issue of liability, the court found no justification for "stacking" the policies and denied the relief sought. Plaintiffs appeal contending they are entitled to collect $30,000 ($15,000 on each policy) as a result of being in an accident with an "underinsured" motorist. We disagree and thus affirm the judgment dismissing the action.

---

[1] The financial responsibility law is codified in Vehicle Code sections 16000-16560. Subdivision (a) of section 16056 provides in pertinent part: "No policy or bond . . . shall be effective . . . unless . . . the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, . . . to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident . . . ."

Each of the three policies of insurance contained a condition captioned "Other Insurance" which was printed in capital letters in boldface type. That clause provided in pertinent part: "If the insured has other similar insurance available to him, any damages shall be deemed not to exceed the higher of the applicable limits of the respective coverages and such damages shall be prorated between such coverages in such proportion as each coverage bears to the total of such limits." The policies further provided: "With respect to any occurrence, accident or loss to which any other insurance policy or policies issued to the insured by the company also apply, no payment shall be made hereunder which, when added to any amount paid or payable under such other insurance policy or policies, would result in a total payment to the insured or any other persons in excess of the highest applicable limit of liability under any one such policy."

Prior to the accident, Farmers mailed to the Jansen family a notification that in the event they had uninsured motorist coverage and were involved in an accident where "the bodily injury limits carried by the owner or operator of the other vehicle are less than the unpaid bodily injury damages you are legally entitled to, your uninsured motorist coverage will make up the difference, up to its limits." Upon discovering that the foregoing endorsement was incomplete, Farmers notified their insureds that the clause was to be modified as follows: "If your policy includes uninsured motorist coverage and you are in an accident where the bodily injury limits carried by the owner or operator of the other vehicle are less than the unpaid bodily injury damages you are legally entitled to, your uninsured motorist coverage will make up the difference, up to its limits, *less the amount of coverage available to the other party.*" The underlined phrase constitutes the only change made by the amendment to the original endorsement.

Plaintiffs contend, of course, that the change in the endorsement created an ambiguity that entitles them to "stack" the coverage provided by the uninsured motorist provisions contained in each of the three policies issued by Farmers.

At the core of the dispute is the interpretation and application of the language found in the original policy and the subsequent endorsements. We therefore analyze the pertinent provisions in light of certain basic principles which guide the interpretation of insurance contracts in general.

■ " 'The fundamental rule of construction applicable to contracts of insurance requires the enforcement of a contract according to the intention of the parties as demonstrated by the language employed, read, and considered as a whole. The instrument is to be construed in a manner which gives a reasonable meaning to all its provisions in a natural, reasonable and prac-

tical manner, having reference to the risk and subject matter and to the purposes of the entire contract.' '' (*Home Indem. Co.* v. *Leo L. Davis, Inc.* (1978) 79 Cal.App.3d 863, 869 [145 Cal.Rptr. 158].)

■ '' 'Absent circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense.' [Citations.] And where the terms of an insurance policy are plain and explicit, a court will not indulge in a forced construction so as to cast a liability upon the insurance company which it has not assumed. [Citations.]' '' (*California State Auto Assn. Inter-Ins. Bureau* v. *Hoffman* (1978) 77 Cal.App.3d 768, 775 [143 Cal.Rptr. 835].)

Applying these principles, we agree with the trial court that the provisions at issue are in no way ambiguous. The terms clearly state that the total limit of Farmers' liability under the policies shall not exceed the highest applicable limit under any one policy. The words are susceptible to only one reasonable meaning, that coverage is limited to the higher of any two or more policies available to the insured, including those held by the insured himself as well as under policies held by other persons. The endorsement and its subsequent amendment in no way altered the "other insurance" provisions of the policies. Although the provisions of the endorsement may make uninsured motorist coverage available even where the adverse party has liability insurance, the endorsement is part of the policy and is subject to the conditions which limit the amount of the recovery.

■ The conditions in the Farmers' policies are specifically authorized by Insurance Code section 11580.2, subdivision (d), which states in relevant part: ". . . the policy or endorsement may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages and such damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of such limits." In *Rudder* v. *Farmers Ins. Exchange* (1980) 107 Cal.App.3d 158 [165 Cal.Rptr. 562, 21 A.L.R.4th 205], we held that this provision was a valid limitation on the extent of the insureds' recovery. When an insurer issues multiple insurance policies, each providing uninsured motorist coverage and containing an "other insurance" clause, the insured party may not pyramid his damages, but can recover only the maximum amount to which he is limited by the "other insurance" clause.[2]

[2]We note here that in 1984, the Legislature amended Insurance Code section 11580.2 by adding the following provision: "(q) Regardless of the number of vehicles involved whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons." This amendment effectively codified our holding in *Rudder* v. *Farmers Ins. Exchange, supra;* see also *Tholen* v. *Carney* (9th Cir. 1977) 555 F.2d 479.)

Plaintiffs' argument overlooks what risk was being insured against and what the insurance contract provided. Under these policies, each vehicle was insured and it is theoretically possible that at one given moment, all three vehicles could be operating and in three individual accidents, be struck by three uninsured or "underinsured" motorists. In such a case each operator would have $15,000 coverage ($30,000 per accident) under each policy. This was the risk insured against and this is the reason separate premiums were paid on each policy. The additional premiums represent payment for the extra risks taken by the insurance company in insuring additional vehicles and were intended as such. This is the clear and plain import of the "other insurance" clause in the policies.

The endorsements, which plaintiffs erroneously claim are ambiguous, merely extended the coverage afforded by the uninsured motorist provisions in each policy. They did not serve to create a new category of insurance that somehow abrogated the terms and conditions of the original insurance contracts. In its statement of decision, the trial court aptly characterized the nature and purpose of the endorsements. "The plain intent here is to give additional protection to one's own insured. If it had not been for [these] additional 'extended uninsured motorist' provisions neither of the plaintiffs would have received the additional $15,000 [each] under the uninsured motorists provisions. For plaintiffs now to say that they did not recover under the uninsured motorists provision but under a new class of underinsured motorists is . . . giving a great emphasis to form rather than substance."

In the absence of ambiguities, the rights of the parties rest on the insurance contract as written. Courts should not indulge in forced construction so as to cast upon the insurance company liability which it has not assumed. The intention manifested by the policy is to limit the insurer's liability. Both parties agreed to the provision and we cannot presume to rewrite their contract.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellants' petition for review by the Supreme Court was denied January 16, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.