[No. A066714. First Dist., Div. Three. June 27, 1995.]

MICHAEL SUTTON et al., Plaintiffs and Respondents, v.
FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

**COUNSEL**

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Lawrence M. Guslani, Susan H. Handelman, Kevin T. Hunsaker, King & Associates and Michael A. King for Defendant and Appellant.

Hal F. Seibert for Plaintiffs and Respondents.

**OPINION**

**MERRILL, J.**—Following an accident with an underinsured motorist, plaintiffs Michael and Mary Sutton who held three separate automobile insurance policies on three separate vehicles with defendant Farmers Insurance Exchange (Farmers), unsuccessfully sought coverage under the policy with the highest underinsured motorist liability limit. Thereafter, plaintiffs filed the instant action for declaratory relief. Following trial, the trial court entered judgment in their favor and Farmers has appealed. For reasons which follow we reverse the judgment.

## I

According to the record, on April 30, 1991, plaintiff Michael Sutton was struck from the rear while driving his 1989 Isuzu I-Mark (Isuzu). Plaintiff allegedly suffered severe injuries with compensatory damages in excess of $100,000. The driver who struck him had liability insurance with limits of only $15,000. Plaintiffs settled with the driver for the $15,000 policy limits.

At the time of the accident, plaintiffs owned two other vehicles in addition to the Isuzu: a 1976 Ford pickup truck (pickup truck) and a 1989 Ford Taurus (Taurus). Each of plaintiffs' vehicles was insured through Farmers by a separate policy. The policy covering the Isuzu had uninsured/underinsured motorist coverage limits of $30,000 per person, $60,000 per occurrence; the policy covering the pickup truck had uninsured/underinsured motorist coverage limits of $50,000 per person, $100,000 per occurrence; and the policy covering the Taurus had uninsured/underinsured motorist coverage limits of $100,000 per person, $300,000 per occurrence.

Plaintiffs filed an underinsured motorist claim with Farmers seeking coverage based on the $100,000/$300,000 limits of the Taurus policy. Farmers responded with a tender of $15,000 based on the coverage limits of $30,000 per person contained in the Isuzu policy. This suit followed.

At trial, in support of its action in rejecting plaintiffs' claim for the higher coverage limits of the Taurus policy, Farmers relied on one of the stated "Exclusions" contained within "Part II" of the policy pertaining to the "UNINSURED MOTORIST." The exclusion provides: "This coverage does not apply to *bodily injury* sustained by a person: [¶] 1. While *occupying* any vehicle owned by you or *a family member* for which insurance is not afforded under this policy or through being struck by that vehicle."

Plaintiffs, meanwhile, point to two other provisions of the policy in support of their claim. One provision, also contained within Part II under the subheading "Other Insurance," provides: "5. If any applicable insurance other than this policy is issued to you by us or any other member company of the Farmers Insurance Group of Companies, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability." The other provision, located in "Part V" of the policy pertaining to "CONDITIONS" under the subheading "Two or More Cars Insured," states: "With respect to any *accident* or *occurrence* to which this and any other auto policy issued to you by any member company of the Farmers Insurance Group of Companies applies, the total limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy." (Italics added.)

In holding in favor of plaintiffs, the trial court found that the latter two provisions, "while aimed at the prevention of stacking to the trained eye, could lead the untrained mind to expect the higher coverage."

## II

Preliminarily, we note that construction of the instant policy is a matter of law because it is based upon the terms of the policy agreement without the aid of extrinsic evidence. We are not bound by the trial court's interpretation and it is our duty to make the final determination in accordance with the applicable principles of law.

■ Generally speaking, " ' "[t]he fundamental rule of construction applicable to contracts of insurance requires the enforcement of a contract according to the intention of the parties as demonstrated by the language employed, read, and considered as a whole. The instrument is to be construed in a manner which gives a reasonable meaning to all its provisions in a natural, reasonable and practical manner, having reference to the risk and subject matter and to the purposes of the entire contract." ' [Citation.] [¶] ' "Absent circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense." [Citations.] And where the terms of an insurance policy are plain and explicit, a court will not indulge in a forced construction so as to cast a liability upon the insurance company which it has not assumed. [Citations.] ' [Citation.]" (*Barrett* v. *Farmers Ins. Group* (1985) 174 Cal.App.3d 747, 750-751 [220 Cal.Rptr. 135].)

■ Applying these principles, we find that the exclusionary language of the Taurus policy, cited by Farmers, precludes coverage under that policy in the instant case. Plaintiff Michael Sutton sustained bodily injury while occupying a vehicle which he owned but "for which insurance [was] not afforded under [the Taurus] policy." Thus, he is barred from claiming coverage under the policy.

■ "There is no doubt that an insurance company can limit the coverage of a policy issued by it as long as such limitation conforms to the law and is not contrary to public policy; when it has done so the plain language of the limitation must be respected. [Citations.]" (*Public Employees Ins. Co.* v. *Mitchell* (1985) 173 Cal.App.3d 814, 817 [219 Cal.Rptr. 129].)

■ Insurance Code section 11580.2 requires automobile insurance companies to provide coverage for their insureds for injury caused by an uninsured/underinsured motorist. The exclusionary language at issue is substantially similar to the language of subdivision (c)(6) of that statute which

states: "The insurance coverage provided for in this section does not apply either as primary or as excess coverage: [¶] To bodily injury of the insured while occupying a motor vehicle owned by an insured . . . unless the occupied vehicle is *an insured motor vehicle* . . . ." (Italics added.) The term "insured motor vehicle" is defined in subdivision (b) of section 11580.2 as "the motor vehicle described in the underlying insurance policy of which the uninsured motorist endorsement or coverage is a part."

Thus, in *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657 [128 Cal.Rptr. 514], the court denied coverage to a claimant whose uninsured motorist insurance covered a vehicle other than the one he was in at the time he was injured. The claimant, while riding his motorcycle, was injured in a collision with an uninsured motorist. Although he carried liability insurance on the motorcycle, his policy excluded uninsured motorist coverage. The claimant sought to obtain coverage through a policy on another vehicle he owned which was not involved in the accident but which included uninsured motorist coverage. As here, the subject policy excluded coverage for injuries incurred while occupying a motor vehicle owned by the insured or a family member but not insured under the policy. Citing subdivisions (c)(6) and (b) of Insurance Code section 11580.2, the court denied coverage stating: "[The other policy] both by its terms and consistent with the exemption authorized by section 11580.2, precluded liability to plaintiff when he sustained injuries while occupying a motorcycle owned by him which was not an 'insured motor vehicle.' " (56 Cal.App.3d at p. 663.)

Similarly, in *Hartford Casualty Ins. Co.* v. *Cancilla* (1994) 28 Cal.App.4th 1305 [34 Cal.Rptr.2d 302], the heirs of an insured with multiple automobile insurance policies were barred from recovering under more than one policy. The insured in that case was killed in an accident involving his motorcycle and an uninsured motorist. The insurer of the motorcycle paid the heirs the uninsured motorist coverage policy limits. Thereafter, the heirs sought additional coverage from the insurer of decedent's other vehicle, a van. However, the policy on the van excluded coverage for injuries incurred while occupying " '. . . any vehicle owned by you . . . that is not a covered "auto." ' " (*Id.,* at p. 1308.) In rejecting the heirs' claim the *Hartford* court said: "[Claimants'] position strains credulity when one considers the specific problem Insurance Code section 11580.2, subdivision (c)(6) was meant to resolve, the purpose of the statute and the language of the statute read as a whole. [Claimants] argue[] that section 11580.2 simply insures people, not vehicles. [They are] only half right. The section allows only certain people to claim uninsured motorist coverage—*those whose uninsured motorist insurance covers the vehicle they are driving at the time of an accident with an uninsured motorist.*" (*Id.,* at pp. 1311-1312, italics added.)

Turning to the case at bar, it is clear that the language and intent of the exclusion in plaintiffs' insurance policy on the Taurus is substantially identical to the language and intent of the exclusion found in Insurance Code section 11580.2, subdivision (c)(6), "[a]s both exclusions use substantially similar language to describe the operative event which triggers the exclusion, namely, 'occupying a . . . motor vehicle' which is not an 'insured' motor vehicle." (*Public Employees Ins. Co.* v. *Mitchell, supra,* 173 Cal.App.3d at p. 818.) Since plaintiffs' claim is based on an accident involving the Isuzu and the Isuzu is not an insured motor vehicle under the policy for which coverage is sought, their claim is barred.

The terms of the three insurance policies in the instant case are very similar, but they differ in at least one notable respect—i.e., the amount of uninsured/underinsured coverage. By issuance of the policies with different amounts of coverage, Farmers was able to vary its risk and plaintiffs were only required to pay premiums commensurate with the coverage. These terms were agreed upon by the parties and, as we have seen, are in conformance with the law.

To hold otherwise would permit motorists who own several vehicles to insure one with maximum coverage and the others with minimum coverage and then, regardless of which vehicle they were driving at the time of an accident, claim uninsured motorist coverage under the policy with maximum coverage. That is, in fact, what has happened here. Clearly, this was not the intention of the parties in entering into their contractual agreement.

■ Nor are we deterred from our finding by the two aforementioned policy provisions relied upon by plaintiffs. Both the "Other Insurance" and the "Two or More Cars Insured" clauses address a situation which does not exist here—i.e., the situation where the accident or occurrence at issue is covered by more than one insurance policy. These provisions serve to limit recovery in such a case to the amount provided by the single policy with the highest limits of liability. The operative language in these clauses are the words "applicable" and "applies," respectively: "[i]f any *applicable* insurance other than this policy is issued to you"; and "[w]ith respect to any [accident or occurrence] to which this and any other auto policy issued to you . . . *applies.*" (Italics added.) Here, the underlying policy, the Taurus policy, is not applicable. Thus, neither are these provisions applicable.

The "Other Insurance" and "Two or More Cars Insured" clauses are specifically authorized by Insurance Code section 11580.2, subdivision (d), which states in relevant part: "[T]he policy or endorsement may provide that if the insured has insurance available to the insured under more than one

uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and the damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits." These provisions are specifically aimed at precluding "stacking"—i.e., the practice of adding together the limit of liability for two or more vehicles or two or more policies to determine the total amount of coverage available to injured persons. (See *Barrett* v. *Farmers Ins. Group*, *supra*, 174 Cal.App.3d at pp. 751-752.) Stacking, as plaintiffs freely admit, is not an issue in this case.

### III

The judgment is reversed. Appellant shall recover its costs on appeal.

Chin, P. J., and Corrigan, J., concurred.