Filed 12/3/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TOIAH GORDON et al., | B329455 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV38762) |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Law Offices of Christina M. Coleman, Christina M. Coleman and Michael L. Cohen for Plaintiffs and Appellants.

Berkes Crane Santana & Spangler, Steven M. Crane and Barbara S. Hodous for Defendant and Respondent.

—————————————

This case involves the interpretation of an insurance policy exclusion for bodily injury arising out of the abuse or molestation of a person in the "care, custody or control" of an insured, or the negligent supervision of an abuser for whom the insured is legally responsible. In 2015 Zongwei Shen, the owner and operator of a massage spa, purchased a commercial insurance policy from Continental Casualty Company (Continental) that provided for commercial liability coverage with an exclusion for abuse or molestation. In June 2019 Toiah Gordon, Morganne Mersadie Root, and Karina Carrero (collectively, the Gordon plaintiffs) sued Shen and his wife Zhong Xin (the spa's manager), alleging Shen sexually assaulted and molested them during massage sessions. After Continental declined to provide a defense, Shen and Xin stipulated to liability, and a judgment for $6.8 million was entered against them. Shen and Xin assigned their rights against Continental to the Gordon plaintiffs in exchange for a covenant not to execute on the judgment against Shen and Xin.

The Gordon plaintiffs, Shen, and Xin (the Gordon appellants) subsequently sued Continental for breach of contract and related claims. Continental moved for summary judgment on the basis subsections (a) and (b) of the abuse or molestation exclusion in the insurance policy applied, and the trial court granted the motion. Subsection (a) of the exclusion states the policy does not apply to bodily or personal injury "arising out of" the "actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." Subsection (b) excludes bodily or personal injury arising out of, inter alia, the negligent employment or supervision "of a person

2

for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above."

The Gordon appellants contend Continental breached its duty to defend Shen because Gordon, Root, and Carrero were not in the "care, custody or control" of Shen within the meaning of subsection (a) of the exclusion, given that Shen did not have exclusive or complete control over the three women. The Gordon appellants rely on a Court of Appeal case construing the phrase "care, custody or control" in an insurance policy exclusion for damage to property (not persons) to require "exclusive or complete control." Using the plain and ordinary meaning of the terms "care" and "control," we conclude the exclusion applied to the injury to Gordon because, on the facts alleged in the Gordon action, Shen had care and control of Gordon during the massage.[1] Although California courts have not construed "care, custody or control" in the context of an abuse or molestation exclusion, courts in other jurisdictions have adopted a similar interpretation with respect to the exclusion.

The Gordon appellants also contend Continental breached its duty to defend Xin because the underlying complaint alleged Xin negligently trained Shen, which the Gordon appellants claim does not fall within either subsection (a) (arising out of Shen's abuse) or subsection (b) (arising from Xin's negligent employment or supervision of Shen). We agree with the federal and state courts that have held negligent training claims fall within exclusions similar to the abuse or molestation exclusion here. With respect to the exclusion for negligent employment or

---

[1] As we will discuss, the claims by Root and Carrero are based on alleged assaults that occurred outside the coverage period.

supervision of an employee who is alleged to have abused or molested a person, negligent training of an employee is a form of negligent hiring, retention, or supervision of an employee, which is covered by subsection (b). An insurance policy exclusion need not use the word "training" for the exclusion to apply, so long as the complaint alleges the abuse or molestation arose out of the negligent employment or supervision of the employee. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Policy*

In 2015 Continental issued Shen, doing business as Nobles Massage Spa, a commercial liability policy effective from October 3, 2015 through October 3, 2016 (the Policy). The Policy covered Shen and Xin as insureds "with respect to the conduct of a business of which [Shen is] the sole owner." The Policy included a "businessowners liability coverage form," which states in part: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury,' 'property damage' or 'personal and advertising injury,' to which this insurance does not apply."[2]

---

[2]    We omit the boldface and capitalization in quoted text from the insurance policy and the complaint.

4

The Policy contained an endorsement titled "abuse or molestation exclusion," which provides: "The following applies to Businessowners Liability and supersedes any provision to the contrary: [¶] This insurance does not apply to 'bodily injury,' 'property damage' or 'personal and advertising injury,' arising out of: [¶] (a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or [¶] (b) The negligent: [¶] (i) Employment; [¶] (ii) Investigation; [¶] (iii) Supervision; [¶] (iv) Reporting to the proper authorities, or failure to so report; or [¶] (v) Retention; [¶] of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above."

B.    *The Gordon Action*

On June 28, 2019 the Gordon plaintiffs filed a complaint against Shen, Xin, and Sanyiweile, Inc.[3] doing business as Nobles Massage Spa and Nobles Foot Massage Spa (Nobles), alleging 11 causes of action, including for sexual battery; battery; assault; false imprisonment; intentional infliction of emotional distress; and negligent hiring, training, and supervision. (*Gordon v. Sanyiweile, Inc.*, (Super. Ct. Los Angeles County, 2019, No. 19STCV22856) (Gordon action).) Gordon, Root, and Carrero jointly alleged seven of the causes of action, including sexual assault; only Root and Carrero alleged causes of action for battery, assault, false imprisonment, and intentional infliction of emotional distress.

The complaint alleged on information and belief that Shen "was the sole owner of Nobles as a sole proprietorship before

---

[3]    Sanyiweile is not a party to this appeal.

5

ownership was transferred to Sanyiweile." The complaint also alleged on information and belief that Xin was doing business as June Snow Massage Spa. The complaint further alleged, "Xin is Shen's wife, and co-owned Nobles along with Shen, either directly or indirectly through community property, and co-managed Nobles. On further information and belief, after Shen's criminal conviction related to the matters alleged in this complaint, Shen transferred ownership of Nobles from Sanyiweile to Xin, without consideration, and Xin continues to operate Nobles as June Snow Massage Spa, using all of Nobles's existing facilities, equipment, staff, and premises."

The complaint alleged Gordon, Root, and Carrero were regular customers of Nobles. During a massage session on July 16, 2016, Shen "knead[ed] the area around [Gordon's] buttocks and vagina" and "proceed[ed] to fully cup, knead and massage [her] breasts." Shen had an erection and "repeatedly rubbed against [Gordon] while he was continuing the massage, holding [her] down with his body weight and pressure." At the end of the massage, Shen "moved her panties to the side to fully expose her vagina, and wiped [her] vagina with a towel." Gordon thereafter "jumped away" from the massage table and left Nobles. Gordon later reported Shen's conduct to the police. Shen was prosecuted for his actions against Gordon and another female victim, but he was acquitted.

With respect to Root, the complaint alleged that during a massage session on November 26, 2017 Shen pushed Root's head down on the massage table several times despite her protest. Shen repeatedly touched Root's breasts and grinded his fist into her labia, bruising her vagina. When Root got up to confront Shen, he left the room saying, "'[Y]ou're done.'" Root later

6

reported Shen's conduct to the police. Shen was prosecuted and pleaded guilty to false imprisonment.

As to Carrero, the complaint alleged that during a massage session on May 2, 2018 Shen attempted to pull down Carrero's panties. After Carrero shoved his hands away, Shen reached under her panties, grabbed her bare left buttock, and began to slide his hand towards her vagina. Carrero stopped Shen and yelled, "'No, [p]lease.'" Shen responded by laughing. Carrero ended the massage session and left Nobles. She reported the incident to the police, and charges against Shen were added to the criminal case involving Shen's sexual assault of Root.

The cause of action against Xin and Sanyiweile for negligent hiring, training, and supervision alleged the defendants had a duty "to supervise their agents, employees and independent contractors who were responsible for providing massage services to patrons," including the Gordon plaintiffs, "and [to] ensure that they were fit to perform their jobs and that they were properly trained in the laws setting forth their ethical obligations not to sexually assault patrons." The complaint added, "Defendants further negligently trained, supervised, controlled, [and] managed . . . their business, their employees, and their agents, including [Shen] and permitted [him] to have unsupervised access to female patrons, including Plaintiffs."

C.    *The Complaint in This Action*
On October 20, 2021 the Gordon appellants filed this action against Continental, Topco Insurance Agency, Inc., Northfield Insurance Company, and Hawkeye Wholesale Insurance Services

7

Inc.[4]  The operative first amended complaint (complaint) alleged Shen and Xin timely notified Continental of the Gordon action and demanded a defense, which Continental refused to provide. Shen and Xin entered into an agreement with the Gordon plaintiffs to submit their dispute to arbitration.  The arbitrator awarded $6,778,231 to the Gordon plaintiffs.  On May 3, 2021 the trial court confirmed the arbitration award and entered judgment for the arbitration award amount against Shen and Xin, jointly and severally.[5]  Shen and Xin then assigned their rights under the Policy to the Gordon plaintiffs in exchange for a covenant not to execute on the judgment.

The complaint in this action asserted three causes of action against Continental.  The first cause of action for breach of contract by the Gordon plaintiffs (as assignees) alleged Continental breached the Policy by failing to provide Shen and Xin with a defense in the Gordon action.  The second cause of action for breach of the implied covenant of good faith and fair dealing by all plaintiffs alleged Continental unreasonably failed to provide Shen and Xin with a defense in the Gordon action as required by the Policy.  The Gordon plaintiffs (as assignees) sought recovery for economic and consequential damages; Shen and Xin sought punitive damages under Civil Code section 3294. The third cause of action for recovery on the judgment against Continental under Insurance Code section 11580, subdivision

---

[4]  The only defendant that is a party to this appeal is Continental.

[5]  The judgment awarded $2,239,872 to Gordon; $2,741,340 to Root; $1,642,257 to Carrero; and attorneys' fees and costs.

8

(b)(2),[6] asserted by the Gordon plaintiffs (as judgment creditors), alleged they were entitled to enforce the judgment as third party beneficiaries of the Policy.

D.    *Continental's Motion for Summary Judgment*

On August 18, 2022 Continental filed a motion for summary judgment or, in the alternative, summary adjudication.[7]  Continental argued the Gordon action against Shen and Xin arose out of the alleged abuse and molestation by Shen, and the claims were not covered by the Policy because of the abuse or molestation exclusion.  Continental asserted the Gordon plaintiffs' claims against Shen fell within the scope of subsection (a) of the abuse or molestation exclusion, and the claims against Xin were encompassed by subsection (b) of the exclusion.  Continental maintained the exclusion "does not need to use the word 'training' in order to encompass the claims at issue against Xin."  Continental also argued it had no duty to

---

[6]    Under Insurance Code section 11580, subdivision (b)(2), an insurance policy must contain "[a] provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

[7]    In support of its motion, Continental submitted a copy of the Policy; the complaint and judgment in the Gordon action; the September 2020 "confidential joint prosecution for deferral of execution agreement" (capitalization omitted) between the Gordon plaintiffs and Shen and Xin; the stipulation to submit the Gordon action to binding arbitration and to stay the action; and the complaint with exhibits in this action.

9

defend Shen and Xin against Root's and Carrero's claims in the Gordon action because the alleged acts occurred outside the policy period.

In their opposition, the Gordon appellants argued subsection (a) of the abuse or molestation exclusion did not apply because Shen and Xin did not have "*exclusive or complete*" control over the Gordon plaintiffs, relying on *McMillin Homes Construction, Inc. v. National Fire & Marine Ins. Co.* (2019) 35 Cal.App.5th 1042, 1053 (*McMillin*), which addressed an insurance policy exclusion that excluded coverage for damages to property in an insured's care, custody or control. Further, the 10th cause of action for "negligent training" did not fall within subsection (b) of the exclusion because negligent training was not synonymous with negligent supervision. The Gordon appellants also asserted that Continental had a duty to defend against Root's and Carrero's claims because there is a duty to defend against "mixed actions" where some claims are covered and others are not.

E.    *The Trial Court's Ruling and Judgment*

After a hearing, on November 30, 2022 the trial court granted Continental's summary judgment motion. In its nine-page ruling, the court found the language of the abuse or molestation exclusion was unambiguous. The court rejected the Gordon appellants' argument that the phrase "'care, custody or control'" used in the exclusion meant Continental had to show Shen had "'exclusive and complete'" control over the Gordon plaintiffs at the time of the sexual assaults, noting *McMillin* involved the custody or control of property, not human beings. The court explained, "It does not take a 'painstaking evaluation'

10

of the specific facts of the instant case for the Court to determine that control, custody, and care of a human being is distinguishable from that of a roof or other physical property. Indeed, the Court cannot contemplate a situation in which a human being is in the 'exclusive and complete' control of another. [¶] With that said, a good description of what 'exclusive and complete' control of another might look like can be found in the underlying Complaint, which repeatedly alleges that Shen refused to allow [the Gordon plaintiffs] to leave his massage table when they attempted to exit, physically pushing [the Gordon plaintiffs] back onto the table."

The trial court also rejected the argument that the abuse or molestation exclusion did not apply to the claims against Xin for negligent training. The court reasoned, "As an initial matter, the Court notes that subsection (a) of the Molestation Exclusion exempts any incident arising out of the acts enumerated in that subsection. As Xin's liability in the underlying case was predicated entirely on Xin's failure to protect [the Gordon plaintiffs] from Shen's repeated assaults, Xin is contemplated by the language in subsection (a). [¶] However, even were that not true, the Court finds that negligent training is an element of negligent 'employment,' 'investigation,' 'supervision,' and 'retention.' As Continental notes on reply, for an exclusion to apply, it is not necessary for the policy to use any particular word that appears in an underlying complaint. . . . [¶] Here, negligent training is clearly contemplated by the employment, investigation, supervision, and retention of Shen. To hold otherwise would allow a plaintiff to void any policy exclusion through the creative use of synonyms."

11

On February 21, 2023 the trial court entered judgment in favor of Continental.  The Gordon appellants timely appealed.

## DISCUSSION

A.  *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.)  "'"'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'"  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'"' (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; accord, *Doe*, at p. 669; *Camden Systems, LLC v. 409 North Camden, LLC* (2024) 103 Cal.App.5th 1068, 1077-1078.)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Camden Systems, LLC v. 409 North Camden, LLC, supra*, 103 Cal.App.5th at p. 1078.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of

12

material fact.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Camden Systems, LLC*, at p. 1078.)

B.  *Interpretation of Insurance Contracts*

"In general, interpretation of an insurance policy is a question of law that is decided under settled rules of contract interpretation."  (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194; accord, *Yahoo Inc. v. National Union Fire Ins. Co.* (2022) 14 Cal.5th 58, 67 ["""While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply."""].)  "'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions.  [Citations.]  "If contractual language is clear and explicit, it governs."  [Citations.]  If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect "'the objectively reasonable expectations of the insured.'"  [Citations.]  Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer.'"  (*Yahoo Inc.*, at p. 67; accord, *Montrose Chemical Corp. of California v. Superior Court* (2020) 9 Cal.5th 215, 230; *Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321.)

"The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection."  (*Minkler v. Safeco Ins. Co. of America, supra*, 49 Cal.4th at p. 321; accord, *California Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co.* (2024) 102 Cal.App.5th 1, 6.)  "[I]n cases of ambiguity, basic coverage provisions are construed

broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer.  The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies." (*Minkler*, at p. 322; accord, *Montrose Chemical Corp. of California v. Superior Court, supra*, 9 Cal.5th at p. 230.)

"'Unlike the obligation to indemnify, which is only determined when the insured's underlying liability is established, the duty to defend must be assessed at the very outset of a case. An insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured, or because the actual judgment is for damages not covered under the policy.'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 287; accord, *Scottsdale Ins. Co. v. MV Transportation* (2005) 36 Cal.4th 643, 654 ["An insurer must defend its insured against claims that create a *potential* for indemnity under the policy."].)

"'Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy.  [Citation.]  But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered.' [Citation.]  This includes all facts, both disputed and undisputed, that the insurer knows or "becomes aware of"' from any source [citation], 'if not "at the inception of the third party lawsuit," then "at the time of tender"' [citation].  'Moreover, that the precise causes of action pled by the third party complaint may fall outside policy coverage does not

14

excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.'" (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc., supra*, 59 Cal.4th at p. 287; accord, *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.* (2018) 5 Cal.5th 216, 222 (*Liberty Surplus*) ["The duty to defend exists if the insurer 'becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement.'"].) "While the duty to defend is broad, it is 'not unlimited; it is measured by the nature and kinds of risks covered by the policy.'" (*Hartford Casualty*, at p. 288; accord, *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 (*Waller*).)

C.    *The Trial Court Properly Granted Summary Judgment*
      1.    *The abuse or molestation exclusion applies to Shen's abuse and molestation of Gordon*

The Gordon appellants contend the phrase "care, custody or control" as used in subsection (a) of the abuse or molestation exclusion only applies if Shen exercised "exclusive or complete control" over Gordon, Root, and Carrero during the sexual assaults, relying on *McMillin, supra*, 35 Cal.App.5th at page 1053.[8]  In *McMillin*, the Court of Appeal found the care,

_____

[8]    We consider only Gordon's allegations because Shen's alleged sexual assaults of Root in November 2017 and Carrero in May 2018 fall outside the Policy's coverage period (October 3, 2015 through October 3, 2016), and therefore are not covered under the Policy.  (See *Buena Vista Mines, Inc. v. Industrial Indemnity Co.* (2001) 87 Cal.App.4th 482, 487 ["A claim is potentially covered only if the alleged harm occurred within the

15

custody or control exclusion at issue applied only "where the insured had exclusive or complete control—and not shared control—over the property that is damaged."[9] (*Ibid*.) The court concluded the insurer had a duty to defend a general contractor, covered as an additional insured under a commercial general liability policy issued to the roofing subcontractor, against a lawsuit brought by homeowners for roofing construction defects. (*Id*. at pp. 1046-1047.) The court explained, "As judicially construed, the care, custody, or control exclusion requires exclusive or complete control. [Citation.] The facts indicate only

_____

policy period."].) The cases relied on by the Gordon appellants to argue that Continental had a duty to defend against all three plaintiffs' claims involve "a 'mixed' action, in which at least one of [the plaintiff's] claims is at least potentially covered and at least one of the claims is not." (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 59.) In that circumstance, "the insurer has a duty to defend the entire 'mixed' action." (*Id*. at pp. 59-60; accord, *Buss v. Superior Court* (1997) 16 Cal.4th 35, 48-49.) The Gordon appellants do not provide any authority, nor are we aware of any, that would require the insurer to defend against a lawsuit brought by multiple plaintiffs where the claims of only one plaintiff fall within the policy period. To hold otherwise would impose a duty on an insurer to defend against multiple claims even if there would have been no duty to defend had the plaintiffs whose claims were not covered by the policy filed separate actions.

[9]     The policy in *McMillin* excluded coverage of property damage for "'[p]roperty in the care, custody, or control of the additional insured(s) or over which additional insured(s) are for any purpose exercising physical control.'" (*McMillin, supra,* 35 Cal.App.5th at p. 1052.)

16

*shared* control between the general contractor and its roofing subcontractor." (*Id.* at p. 1047.)

*McMillin* is distinguishable because the court considered the phrase "care, custody or control" in the context of a property damage exclusion. The court adopted the reasoning in *Home Indem. Co. v. Leo L. Davis, Inc.* (1978) 79 Cal.App.3d 863, 867, 872 (*Davis*), which held physical damage to a pugmill[10] was not excluded from coverage because the insured crane operator's "control of the pugmill was not exclusive at the time of the accident"; rather, the operator relied on employees from the construction company that hired the crane company to guide the operator in lifting the pugmill.[11] The *McMillin* court explained, "*Davis* announced a general rule: The [care, custody or control] exclusion is inapplicable where the facts at best suggest *shared* control." (*McMillin, supra*, 35 Cal.App.5th at p. 1055.) In applying *Davis's* construction of the care, custody or control exclusion "to require *exclusive* or *complete* control," the *McMillin* court cautioned this judicial construction applied only "in a sufficiently analogous context." (*McMillin, supra*, at p. 1053.)

---

[10] A "pug mill" is a "machine in which materials (such as clay and water) are mixed, blended, or kneaded into a desired consistency." (Merriam-Webster's Online Dict. (2024) <https://www.merriam-webster.com/dictionary/pug%20mill> [as of Dec. 3, 2024], archived at **<https://perma.cc/6FSN-RQWJ>**.)

[11] Similar to the exclusion in *McMillin*, the policy in *Davis* excluded coverage of "'property damage to . . . property in the care, custody or control of the insured as to which the insured is for any purpose exercising physical control.'" (*Davis, supra*, 79 Cal.App.3d at p. 867.)

17

The Gordon appellants also contend the phrase "care, custody or control" is ambiguous because it appears 11 times in nine different places in the Policy.[12]  And, they assert, Continental could have defined the phrase in the context of the abuse or molestation exclusion but failed to do so.  However, "[a] term is not ambiguous merely because the policies do not define it. [Citations.]  Nor is it ambiguous because of '[d]isagreement concerning the meaning of a phrase,' or '"the fact that a word or phrase isolated from its context is susceptible of more than one meaning."'  [Citation.]  '"[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."'"  (*State of California v. Continental Ins. Co.,* *supra*, 55 Cal.4th at p. 195; accord, *California Specialty Insulation, Inc. v. Allied World Surplus Lines Ins. Co., supra*, 102 Cal.App.5th at pp. 6, 11, fn. omitted [finding insurance policy's failure to define '"contractor'" did not by itself make the term ambiguous, but concluding the term was ambiguous because it could reasonably be interpreted to mean '"anyone performing construction work pursuant to contract'" or '"anyone hired by [the insured] pursuant to contract'"].)

There are no California cases interpreting the phrase "care, custody or control" in the context of an abuse or molestation

---

[12]     The Gordon appellants provide 10 other instances where "care, custody or control" appears in the Policy besides the abuse or molestation exclusion.  In each instance, "care, custody or control" is used in connection with coverage for loss or damage to property, including business personal property, personal property, fine arts, detached trailers, and valuable papers and records.

18

exclusion.  We construe the language in the exclusion using the words' plain and ordinary meanings.  (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378 ["The 'clear and explicit' meaning of [policy] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation."'"]; *Waller, supra*, 11 Cal.4th at p. 18.)  To determine the ordinary meaning of the words of a contract, we may consider the dictionary definitions of the words.  (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1334 ["'When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word.'"]; *Storm v. Standard Fire Ins. Co.* (2020) 52 Cal.App.5th 636, 645 ["courts utilize dictionaries to ascertain ordinary meaning of words"].)  Merriam-Webster's Online Dictionary defines "care" as "responsibility for or attention to health, well-being, and safety."[13]  The dictionary defines "custody" as "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority" or "safekeeping."  (Capitalization omitted.)[14]  And "control" is

---

[13]     Merriam-Webster's Online Dict. (2024) <https://www.merriam-webster.com/dictionary/care> [as of Dec. 3, 2024], archived at **<https://perma.cc/65SL-7ZXK>**.

[14]     Merriam-Webster's Online Dict. (2024) <https://www.merriam-webster.com/dictionary/custody> [as of Dec. 3, 2024], archived at **< https://perma.cc/Y8HE-G4ML>**.

defined to mean "to exercise restraining or directing influence over" or "to have power over."[15]

Our reading of the "care, custody or control" language in the abuse or molestation exclusion is consistent with the analyses in cases from other jurisdictions interpreting similar provisions.[16]

---

[15] Merriam-Webster's Online Dict. (2024) <https://www.merriam-webster.com/dictionary/control> [as of Dec. 3, 2024], archived at **<https://perma.cc/YU2C-ZCGK>**.

[16] We consider case law from federal and state courts applying the law of District of Columbia, Indiana, Kentucky, Massachusetts, Missouri,  and Wyoming that have construed the "care, custody or control" language in the context of the abuse or molestation exclusion.  Similar to California, these jurisdictions strictly construe policy exclusions and resolve any ambiguity against the insurer.  (*Carlyle Inv. Mgmt., L.L.C, v. Ace Am. Ins. Co.* (D.C. 2016) 131 A.3d 886, 896 ["[E]xclusions from coverage are to be strictly construed, and any ambiguity in the exclusion must be construed against the insurer."]; State Automobile Mut. Ins. Co. v. Flexdar, Inc. (Ind. 2012) 964 N.E.2d 845, 848 ["'Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity.'"]; *Ky. Employers' Mut. Ins. v. Ellington* (Ky. 2015) 459 S.W.3d 876, 883 ["'[o]nly an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat'" an insured's reasonable expectation of coverage]; *Dorchester Mutual Ins. Co. v. Miville* (Mass. 2023) 491 Mass. 489, 493 ["'[A]ny ambiguities in the language of an insurance contract are interpreted against the insurer who used them and in favor of the insured.'"]; *Taylor v. Bar Plan Mu. Ins. Co.* (Mo. 2015) 457 S.W.3d 340, 344 ["Exclusionary clauses are construed strictly against the insurer."]; *T.M. v. Exec. Risk Indem., Inc.* (Wyo. 2002) 59 P.3d 721, 725 ["Because insurance contracts are contracts of

In *Valley Forge Ins. Co. v. Field* (1st Cir. 2012) 670 F.3d 93, 95 (*Valley Forge*), the legal guardian of an abused child brought a lawsuit in Massachusetts state court against an insured social worker and her employer for failing to detect or report signs of ongoing physical abuse by the child's adoptive mother and stepfather. The insurers sued the social worker and employer in federal court, seeking a declaratory judgment that the allegations in the underlying action fell within the insurance policy's abuse or molestation exclusion with the same "care, custody or control" language used here. (*Ibid.*) The First Circuit, applying Massachusetts law, affirmed the district court's order granting the insurers' request for a declaratory judgment. (*Id.* at pp. 95, 97.)

The *Valley Forge* court explained, "[T]he plain meaning of 'care' in the Abuse or Molestation Exclusion here accords with the dictionary definition that being 'in the care of' includes 'charge, supervision, management: responsibility for or attention to safety and well-being.' Webster's Third New International Dictionary 338 (1993) (illustrating the definition of 'care' by using it in the phrase 'under a doctor's care'). The underlying complaint alleges the child was not only a patient of the insureds, but also that she was in the care of the [insureds] when she was abused, and there is no serious dispute about this." (*Valley Forge, supra*, 670 F.3d

---

adhesion where the insured has little or no bargaining power to vary the terms, we strictly construe ambiguities against the insurer."].) The Gordon appellants have not cited any authority supporting their construction of the "care, custody or control" language other than *McMillin*.

21

at p. 99;[17] see *McAuliffe v. Northern Ins. Co.* (8th Cir. 1995) 69 F.3d 277, 278, 279 [under Missouri law, the "care, custody or control" language in an abuse or molestation exclusion applied to adult parishioner's claims against priest for sexual abuse and bishop for negligent supervision and retention of priest because parishioner was in priest's care when he counseled her on personal and spiritual matters].)

Similarly, in *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.* (Ind. 2013) 983 N.E.2d 574, 579, the Indiana Supreme Court interpreted the abuse or molestation exclusion by applying a dictionary definition of care: "Webster's defines 'care' in this context as '[t]he function of watching, guarding, or overseeing.' Webster's II New College Dictionary 168 (1995)." The court held a child, who stayed as a guest in a motel room rented by his mother's friend, was in the "'care'" of the motel (as a "'business invitee'") when he was molested by an off-duty motel employee, and therefore the exclusion from coverage applied. (*Id.* at pp. 575, 580 & fn. 8; see *Mid-Century Ins. Co. v. Mid-Am. Mental Health LLC* (N.D. Ind. May 17, 2024, No. 2:23-cv-52) 2024 U.S.Dist.LEXIS 90050 at pp.*1-4, *15-16 [under Indiana law, abuse or molestation exclusion applied to sexual abuse claims brought by substance abuse patient against insureds because

---

[17] The First Circuit in *Valley Forge, supra*, 670 F.3d at pages 99 to 100 also rejected the argument (as do we) that the sexual and physical abuse exclusion in the insurance policy should be interpreted to apply only where the insured exercised "exclusive" control, explaining the cases and treatises relied on for this argument "all concern the 'care, custody or control' of property, not persons."

22

patient was under the "'control'" of physician assistant who exercised "authority or influence over" her].)

Because the abuse or molestation exclusion lists the terms "care, custody or control" in the disjunctive, the exclusion applies if Gordon was under the care, custody, or control of Shen. (*In re Jesus V.* (2004) 32 Cal.4th 588, 622 ["The "'ordinary and popular'" meaning of the word 'or' is well settled. [Citation.] It has a disjunctive meaning: 'In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that."'"]; see *Valley Forge, supra*, 670 F.3d at p. 99 ["The term 'care' must be given a meaning and effect apart from the term 'custody' and the term 'control.' The three words are connected by the disjunctive 'or,' [signaling] they are to be read separately."].) Here, as alleged, Shen was providing a massage to Gordon when he sexually molested her. It is a reasonable reading of the complaint that during the massage session, Gordon was under the "care" of Shen because Shen was responsible for Gordon's well-being as her massage therapist.[18] Gordon was likewise under Shen's control during the massage. The complaint does not allege anyone was in the room during the massage other than Shen, and further, the complaint alleges Shen held Gordon down "with his body weight and pressure."

2.      *The abuse or molestation exclusion applies to the negligence claim against Xin*

The Gordon appellants contend the trial court erred in granting Continental's summary judgment motion as to Xin

---

[18]      The Gordon appellants do not contend Gordon was not under Shen's care, only that she was not in his exclusive control.

23

because the Gordon plaintiffs alleged Xin's negligent "training" of Shen, which is not listed in subsection (a) or (b) of the abuse or molestation exclusion.  Continental argues the 10th cause of action against Xin for "negligent hiring, training and supervision" falls within the exclusion because the cause of action both arises out of Shin's abuse (subsection (a)) and falls within subsection (b).  Continental has the better argument.

As discussed, subsection (a) excludes from coverage any bodily injury "arising out of:  [¶]  . . . [t]he actual or threatened abuse or molestation by anyone of any person who is in the care, custody or control of any insured."  "California courts have interpreted the terms 'arising out of' or 'arising from' broadly:  'It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy.  Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.'" (*The Travelers Property Casualty Co. of America v. Actavis, Inc.* (2017) 16 Cal.App.5th 1026, 1045; accord, *St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mutual Ins. Co.* (2012) 210 Cal.App.4th 645, 658.)  "This broad interpretation of 'arising out of' applies to both coverage provisions and exclusions." (*Actavis*, at p. 1045; accord, *Jon Davler, Inc. v. Arch Ins. Co.* (2014) 229 Cal.App.4th 1025, 1035 ["'the "'arising out of' connective . . . broadly links" the exclusionary operative events with the exclusion' and is 'generally equated' with "'origination, growth or flow from the event"'"].)  As discussed, Gordon's bodily injury arose out of (i.e., originated or flowed from) Shen's sexual assault and molestation, and therefore, Xin's alleged negligent training of Shen falls within subsection (a) of the exclusion.

24

Courts in other states have likewise construed the "arising out of" language broadly, holding that a claim for "negligent training" of an employee falls within an abuse or molestation exclusion because the claim arises from the bodily injury caused by the abuse. In *Colvin v. Nautilus Ins. Co.* (Ky.Ct.App. 2024) 689 S.W.3d 736, 739, 741, the Court of Appeals of Kentucky held the abuse or molestation exclusion applied to the mother's negligent training claim against a daycare provider.[19] The court reasoned, "The endorsement applied to all claims of bodily injury arising out of abuse or molestation. This includes all of [mother's] claims, including her negligent training claim against [the daycare provider]. Like all of [mother's] other claims, the negligent training flows from the bodily injury her child suffered. It is fundamental that 'the tort of negligence is not deemed to have been committed unless and until some damage is done.' [Citation.] If not for [the daycare employee's] actions causing injury to the child, there would be no claim for negligent training against [the daycare provider]. [Citation.] This is a sufficient causal connection to prove [mother's] claim falls within the endorsement." (*Id.* at p. 741; accord, *Nautilus Ins. Co. v. Our*

---

[19] In *Colvin*, an endorsement to the policy provided, "'Abuse or molestation' means 'bodily injury' to any person while in the care, custody or control of any insured, **arising out of** actual or threatened abusive behavior, conduct, or verbal or nonverbal communication . . . . [¶] 'Abuse or molestation' includes the negligent: [¶] a. Employment; [¶] b. Supervision; [¶] c. Investigation; [¶] d. Reporting to the proper authorities or failure to so report; or [¶] e. Retention; [¶] of a person whose behavior, conduct or verbal or nonverbal communication results in 'abuse or molestation.'" (*Colvin v. Nautilus Ins. Co., supra,* 689 S.W.3d at p. 741.)

25

*Camp, Inc.* (10th Cir. 2005) 136 Fed.Appx. 134, 137-138 [under Wyoming law, abuse or molestation exclusion applied to camper's claim against camp provider for negligent supervision and training of camp counselors because camper's injuries "clearly originated from, grew out of or flowed from the alleged abuse and molestation" by a co-camper].)

To the extent the Gordon plaintiffs' 10th cause of action against Xin, labeled "Negligent Hiring, Training and Supervision," is based on Xin's employment or supervision of Shen, the language in subsection (b) of the abuse or molestation exclusion would also apply to Xin's alleged negligent training of Shen.[20]  As discussed, subsection (b) excludes from coverage bodily injury "arising out of" the negligent employment *or* supervision "of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above."

---

[20]     A cause of action for hiring, retention, or supervision under California law generally seeks to impose liability on an employer. (*Liberty Surplus, supra*, 5 Cal.5th at p. 222 ["[A] cause of action for negligent hiring, retention, or supervision seeks to impose liability on the employer, not the employee."]; *Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054 ["California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee."].)  Given the lack of clarity in the complaint in the Gordon action as to whether Xin was sued as an employer or supervisor (and Continental's position at oral argument that subsection (b) of the exclusion applies to both employers and supervisors), we assume without deciding that subsection (b) applies to a cause of action against an employer or employee supervisor.

The Gordon appellants contend subsection (b) of the exclusion does not apply to Gordon's claims against Xin because "training" is not expressly excluded. Although negligent training is not listed in subsection (b), it is encompassed within negligent employment and supervision, which are expressly excluded. (See *Jon Davler, Inc. v. Arch Ins. Co., supra*, 229 Cal.App.4th at pp. 1029, 1036-1037 [employment-related practices exclusion applied to bar coverage of employees' false imprisonment claim against insured employer even though false imprisonment was not expressly listed in the exclusion, explaining "the nexus between the 'other tort' (i.e., false imprisonment) and the employees' employment with Jon Davler was as close as a nexus can be"]; cf. *Aroa Marketing Inc. v. Hartford Ins. Co. of Midwest* (2011) 198 Cal.App.4th 781, 788 [intellectual property rights exclusion applied to right of publicity claims even though "the right of publicity is not specifically listed in the exclusion" because the "exclusion applies when the injury arises out of 'any violation of any intellectual property rights'"].)

Further, it is not a reasonable interpretation of subsection (b) of the exclusion to limit it to a claim that alleges negligent "supervision," and not apply the exclusion to a claim that uses a different verb to describe a type of negligent supervision, i.e., that the employer or supervisor failed to train the employee. (See *Mid-Century Ins. Co. v. Mid-Am. Mental Health LLC, supra*, 2024 U.S.Dist.LEXIS 90050 at pages *2, 20 [although "the words 'negligent training' are not specifically mentioned" in the exclusion, under Indiana law there is only one tort for "'negligent hiring, training and supervision,'" and therefore, "exclusions for injuries that arose from an employer's negligent 'employment' or 'supervision' of a person also

27

encompass training"]; *Harper v. Gulf Ins. Co.* (D. Wyo. 2002, No. 01-CV-201-J) 2002 U.S.Dist.LEXIS 24492, at pp. *29-30 [under Wyoming law, sexual abuse or molestation exclusion applied to employee's failure to warn claim against employer, explaining "[a]n employer's 'duty to warn' is subsumed and implied within his 'employment,' 'investigation,' 'supervision,' and 'retention' of a molesting employee. . . . It is impossible for [the insurer] to anticipate every claim that creative counsel will craft in order to draft a complaint that will trigger coverage."].)

3.    *The trial court properly granted Continental's summary judgment motion*

Each of the three causes of action alleged by the Gordon appellants against Continental requires a showing Continental breached its duty to defend Shen and Xin in the Gordon action. As discussed, Shen's abuse and molestation of Gordon and Xin's negligent employment or supervision of Shen fall within the abuse or molestation exclusion from coverage. Therefore, Continental did not have a duty to defend Shen or Xin in the Gordon action.

The elements of the first cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; accord, *Bennet v. Ohio National Life Assurance Corp.* (2023) 92 Cal.App.5th 723, 729.) Because there was no potential coverage under the Policy, Continental did not breach the Policy by failing to defend Shen and Xin against Gordon's claims.

28

Likewise, with respect to the second cause of action for breach of the implied covenant of good faith and fair dealing, "if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." (*Waller, supra*, 11 Cal.4th at p. 36; accord, *All Green Electric, Inc. v. Security National Ins. Co.* (2018) 22 Cal.App.5th 407, 418.)

The third cause of action asserted by the Gordon plaintiffs for recovery on the judgment against Continental under Insurance Code section 11580, subdivision (b)(2), likewise fails. "'Where judgment is obtained against an insured in an action based on bodily injury, death, or property damage, the plaintiff (now a judgment creditor) may bring an action against the insurer on the policy, subject to the policy's terms and limitations, to recover on the judgment. [Citation.] . . . Among the elements that must be proven is that "'the policy covers the relief awarded in the judgment.'"'" (*Thee Sombrero, Inc. v. Scottsdale Ins. Co.* (2018) 28 Cal.App.5th 729, 735; accord, *Hearn Pacific Corp. v. Second Generation Roofing Inc.* (2016) 247 Cal.App.4th 117, 140.)

Continental therefore met its initial burden on summary judgment to show the Gordon appellants could not establish an element of their causes of action, shifting the burden to the Gordon appellants to raise a triable issues of material fact. The Gordon appellants contend Continental failed to meet its burden to prove "there was no possibility of coverage under the factual circumstances that existed" because it did not submit any evidence of the actual facts. But the determination of whether

29

Continental owed a duty to defend is based on a comparison of the allegations of the complaint in the Gordon action with the terms of the Policy. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc., supra*, 59 Cal.4th at p. 287; *Waller, supra*, 11 Cal.4th at p. 19.) Continental submitted the complaint in the Gordon action and the Policy in support of its summary judgment motion. We accept the allegations in the underlying Gordon complaint for purposes of determining whether Continental had a duty to defend Shen and Xin under the Policy.

The Gordon appellants could have created a triable issue of fact by presenting extrinsic facts in opposition to Continental's motion for summary judgment showing the abuse or molestation exclusion did not apply. They failed to do so. The trial court therefore properly granted Continental's summary judgment motion.

## DISPOSITION

The judgment is affirmed. Continental shall recover its costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.          SEGAL, J.

30